## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

John H. Page                                              )
1077 30th Street NW, Apt. 411                  )
Washington, D.C. 20007                                    )
Tel: 202 352 6952

                                  Case: 1:22−cv−01416
                                  Assigned To : Pan, Florence Y.

Plaintiff                             Assign. Date : 5/20/2022
                                  Description: Pro Se Gen. Civ. (F−DECK)

v.

Joseph R. Biden Jr., in His Official                     )
Capacity as President of the United                      )
States, Office of the President                          )
1600 Pennsylvania Avenue, N.W.                            )
Washington, D.C. 20500                                    )
                                                          )
Gina M. Raimondo, Secretary                               )
Commerce U.S. Department                                  )
of Commerce                                               )
1401 Constitution Ave NW                                  )
Washington, DC 20230                                      )
                                                          )

Defendants

## COMPLAINT


**RECEIVED**

MAY 2 0 2022

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**RECEIVED**

MAY 20 2022

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

John H. Page                                          )
1077 30th Street NW, Apt. 411              )
Washington, D.C. 20007                                )
Tel: 202 352 6952

Plaintiff

v.

Joseph R. Biden Jr., in His Official                 )
Capacity as President of the United                  )
States, Office of the President                      )
1600 Pennsylvania Avenue, N.W.                       )
Washington, D.C. 20500                               )
                                                      )
Gina M. Raimondo, Secretary                          )
Commerce U.S. Department                             )
of Commerce                                           )
1401 Constitution Ave NW                             )
Washington, DC 20230                                 )
                                                      )

Defendants

Case: 1:22–cv–01416
Assigned To : Pan, Florence Y.
Assign. Date : 5/20/2022
Description: Pro Se Gen. Civ. (F–DECK)

**COMPLAINT**

TABLE OF CONTENTS

I.    *NATURE OF THIS ACTION* ................................................................................ *1*

II.   *JURISDICTION AND VENUE* ............................................................................. *2*

III.  **PARTIES** ............................................................................................................... *5*

   **A.**   **Plaintiff** ............................................................................................................... **5**

   **B.**   **Defendants** ........................................................................................................... **6**

IV.   *FACTS RELEVANT TO THE CLAIMS* ............................................................... *7*

V.    *HARM* .................................................................................................................. *16*

VI.   *CAUSES OF ACTION* ........................................................................................ *16*

   **C.**   **COUNTS I – IV.  Violations of Columbia Law, Art I, 10th & 14th Amendments** .............. **16**

   **D.**   **COUNT V - Equal Footing Violations** ............................................................ **17**

VII.  *PRAYER FOR RELIEF* ...................................................................................... *18*

VIII. *NO JURY DEMAND* ........................................................................................... *19*

## I.   NATURE OF THIS ACTION

1.   Plaintiff is an inhabitant of Columbia and this court decided the Constitution guarantees his right to representation in Congress[1].  That right necessarily runs through a U.S. Const. Art I State.  This is the suffrage the founders expected here, see Federalist at para. 35 below.

2.   Columbia is a State for the purposes of Art I representation:

    a.   Columbia's cession was carried out under the Constitution including Art IV which does not provide for a part of the Union to be made "not a state" or even "not part of a state" and to strip its guaranteed rights of representation in Congress involuntarily.

    b.   The Maryland General Assembly stipulated that State law would survive Columbia's cession (see para. 13) and Congress explicitly accepted so (para. 23).  Columbia's State law enshrines the rights to elect a State Legislature and Delegates to Congress (para. 25).

    c.   Neither the District of Columbia nor Maryland are Columbia's State Legislature for the purposes of Art I representation and it is an "impossibility" for Congress to be so; Amendment X applies, see para. 12 below.  Jurisdiction therefore remains with Columbia.

    2.   At cession in 1801, Columbia had around 11,000 population but by the 1860 census its population qualified it for apportionment of representation.  Hence, with regard to Columbia's inhabitants, including the Plaintiff, Defendants are today obstructing the most valuable right in U.S. democracy; representation.  Their decennial census returns show the District of Columbia but should instead show the State of Columbia.

---

[1] *Adams v. Clinton, 90 F. Supp. 2d 35 (D.D.C. 2000)* affirmed, section B: "Nor could the cession preclude voting representation of the "persons to be" in the ceded area." "Under established constitutional principles, neither the then-People of the District nor their Posterity forfeited that constitutional right when the District became the Seat of Government, and neither Maryland, nor the United States or its officers, had the constitutional authority to forfeit that right for them."
N.B. in the above, "the District" necessarily means "Columbia" since the Federal District did not exist before cession; only Congress had the power to create it.

3. **Defendants are Obstructing Plaintiff's Rights**.  In defiance of the law including *U.S. CONST. Amendments X and XIV*, the Equal Footing doctrine and Columbia State law, the Defendants are unconstitutionally blocking Plaintiff's reserved rights [2] despite the U.S. President having assented to the State law terms of Columbia's cession.

4. **Declaratory Judgment**.  Plaintiff seeks a declaratory judgement order confirming that, to the extent not delegated to Congress under the District Clause[3], as an inhabitant of Columbia he is entitled to Art I rights of representation in Congress through his state jurisdiction.

5. **Discovery Waived.**  Only facts of law and precedent are involved here; Plaintiff waives his right to discovery.

6. **Pre-Trial Conference.**  Plaintiff is ready to meet immediately to prepare for a Pre-Trial Conference as contemplated in FRCP Rule 16.

## II. JURISDICTION AND VENUE

7. This court has jurisdiction over disputes between individuals and the Federal Government of the United States, of which the Defendants are part.

8. Federal Courts have jurisdiction over the Defendants' actions under *28 U.S.C. § 1331, 28 § U.S.C. 1346(a), and 5 U.S.C. §§ 701–706*, because Plaintiff's claims arise partly under the United States Constitution.

9.  This action challenges the constitutionality of the non-apportionment of a congressional district for Columbia by Defendants and may be tried by a three-judge court under 28 U.S.C.

---

[2] *New York v. United States, 505 U.S. 144 (1992)*: "if a power is an attribute of state sovereignty reserved by the Tenth Amendment, it is necessarily a power the Constitution has not conferred on Congress. See United States v. Oregon, 366 U. S. 643, 649 (1961); Case v. Bowles, 327 U. S. 92, 102 (1946); Oklahoma ex rel. Phillips v. Guy F. Atkinson Co., 313 U. S. 508, 534 (1941)."

[3] U.S. CONST. art. I, § 8, cl. 17:  "To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States.."

§ 2284.  As stated above, Defendants, in violation of Art I, Amendments X, XIV and the Equal

Footing doctrine having failed to list the State of Columbia in their decennial census returns.

10. **Federal v. State jurisdiction #1**.  The U.S. District Court for the judicial District of Columbia

may hear cases involving State law claims.  Plaintiff's claims are derived in part from

Columbia's State law and concern rights that have not been delegated to Congress under the

U.S. Constitution.  Partial State law jurisdiction was also concluded in *Adams v. Clinton* cited

at footnote one herein which teaches that Plaintiff's Art I right to representation in Congress

through a State was not extinguished by Columbia's cession viz. "..neither Maryland, nor the

United States or its officers, had the constitutional authority to forfeit that right for them."

11. **Federal v. State jurisdiction #2**. The U.S. Supreme Court in *Evans v. Cornman, 398 U.S. 419*

*(1970)* decided that, in a *U.S. Const. art. I, § 8, cl. 17* Federal enclave within the Union,

inhabitants do not lose their right to representation in Congress; that right remains under the

jurisdiction of their state and is not controlled by Congress under said clause 17:

> "Residents on grounds of the National Institutes of Health are treated by the
> State of Maryland, in which that federal enclave is located, as state residents
> to such an extent that it violates the Equal Protection Clause of the
> Fourteenth Amendment to deny them the right to vote in that State. Pp.  398
> U. S. 420-426."

12. **Federal v. State jurisdiction #3**. Columbia's State law was agreed to in the cession, signed

into law by Defendant A.  Columbia's State law explicitly includes rights to a State Legislature

and delegates to Congress (see para. 25 below) and these remain under state law jurisdiction

protected by Amendment X.  While Congress possesses exclusive legislative powers in the

District of Columbia under the District Clause, neither the District nor Congress is Columbia's

State Legislature for the purposes of representation in Congress under Art I.  State jurisdiction,

as everywhere else in the Union, and not Federal jurisdiction (of which District of Columbia

is a part), applies to Plaintiff's rights of Art I representation:

*Adams v. Clinton, 90 F. Supp. 2d 35 (D.D.C. 2000)* affirmed : "As originally provided under Article I, section 3, the Senate was to be "composed of two Senators from each State," chosen not "by the People of the several States," as in the case of the House, but rather "*by the Legislature thereof.*" U.S. CONST. art. I, *§*3, cl. 1 (emphasis added). **The impossibility of treating Congress as the legislature under that clause is manifest**, as doing so would mean that Congress would itself choose the District's senators."

A word here about Amendment X, which has a different scope in a Federal enclave than in the rest of the Union.  There are cases in which it has been determined that the District of Columbia can be deemed to be a state, for example the District of Columbia has a State Superintendent for Education.  However, this is where the *Adams* precedent is relevant because it teaches that it is **impossible** for the District of Columbia to be a state for the purpose of representation under  *U.S. CONST. art. I, §3, cl. 1*.  The point of this action is to show that a) the acts of cession preserved Plaintiff's right to representation through a state and b) they were not delegated to Congress ergo they must have vested in the State of Columbia and fall exclusively under state jurisdiction.

13. **Federal v. State jurisdiction #4**. Congress accepted and Defendant A assented to the terms of Columbia's cession which are stipulated in the *1791 Act of Maryland*[4].  That Maryland Act ceded most of Columbia's inhabitants' rights to Congress' jurisdiction under *U.S. CONST. art. I, § 8, cl. 17* ("the District Clause") but Congress' rights are limited to the Federal District jurisdiction and the Federal District is not a State for the purposes of Art I representation in Congress.   Those Art I rights to representation therefore remain under Columbia's State jurisdiction and Columbia's laws as referenced in para. 13 above.

---

[4] *1791 Act of Maryland* ceding Columbia: "II. Be it enacted, by the General Assembly of Maryland, That all that part of the said territory, called Columbia, which lies within the limits of this state, shall be and the same is hereby acknowledged to be for ever ceded and relinquished to the congress and government of the United States, in full and absolute right, and exclusive jurisdiction, as well of soil as of persons residing, or to reside, thereon, **pursuant to the tenor and effect of the eighth section of the first article of the constitution of government of the United States**;"

4

14. **Federal v. State jurisdiction #5**. Defendants may not fashion an argument to the effect that 'the way we did this you're not a state and you lost jurisdiction over your constitutionally guaranteed rights'.  Such a position shreds the Constitution.

    To be fair that's not what *Adams v. Clinton* says; that opinion examined and rejected only two theories a) District as State and b) Maryland as DC's State; it did not examine the theory Plaintiff advances here.  Plaintiff holds that *Adams v. Clinton* was correctly decided; no part of the Federal Government has jurisdiction to deprive Plaintiff of his constitutional rights either directly or indirectly[5] and the subject rights are state rights guaranteed to all inhabitants of the Union and remain under state law jurisdiction throughout the Union.

15. This case is brought under 28 U.S. Code § 2201 (a) under which any court of the United States may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.


### III. PARTIES

**A.    Plaintiff**

16. John H. Page is a permanent resident of the United States,  a 20-plus year taxpayer and resident of Columbia and is currently only counted in the U.S. CONST. Art I, §2 census under the heading "District of Columbia".  Plaintiff is not an attorney-at-law, he works with technology companies and has been allowed four patents by the USPTO.

---

[5] *Loughborough 18 U.S. at 322-325, 5 Wheat. 317* "If, before the District was set off, Congress had passed an unconstitutional act affecting its inhabitants, it would have been void. If done after the District was created, it would have been equally void; in other words, Congress could not do indirectly, by carving out the District, what it could not do directly."

**B.    Defendants**

17.  **Defendant A: The Office of the President of the United States**.  All occupiers of the Office

of the President of the United States are or were sworn to faithfully follow the law under U.S.

CONST. Art I, §3 and are with charged with transmitting to Congress the results of each

decennial census of the population of the United States, thus triggering apportionment of the

number of U.S. Senators and Representatives in the Congress[6].  Defendant maintains his office

at, and conducts his official duties from, The White House in Washington, D.C. and has never

included the State of Columbia in such decennial census results.

18.  **Defendant B: the office of Secretary of the U.S. Department of Commerce**.  All occupiers

of the office of Secretary of the U.S. Department of Commerce were or are appointed under

oath to faithfully follow the law and to deliver accurate decennial census returns for the U.S.

President to review, make a final determination on, and transmit to Congress per 13 U.S.C.

§141(b).

---

[6] *Adams v. Clinton, 90 F. Supp. 2d 35 (D.D.C. 2000)* affirmed: "The Secretary of Commerce is required, within nine months of completing the decennial census, to report to the President the total population of each state for purposes of congressional apportionment. *See* 13 U.S.C. §141(b).[2] Upon receiving the report, the President must transmit to Congress "a statement showing the whole number of persons in each State ... and the number of Representatives to which each State would be entitled under an apportionment of the then existing number of Representatives." 2 U.S.C. §2a(a). "Each State shall be entitled ... to the number of Representatives shown" in the President's statement, and within fifteen days of receiving that statement, the Clerk of the House must "send to the executive of each State a certificate of the number of Representatives to which such State is entitled ...." *Id.* §2a(b); *see Franklin,* 505 U.S. at 792, 112 S. Ct. 2767."

## IV. FACTS RELEVANT TO THE CLAIMS

19. The State of Columbia has standing because the Union is indissoluble unilaterally as the Supreme Court has found in *Texas v. White, 74 U.S. 700 (1868)*[7].  Columbia's Art I rights to participation in the Congressional franchise as a state of the union cannot have been annulled without dissolving the Union in part or in whole.  This has not happened.

20. The Supreme Court affirmed this court's *Adams v Clinton* decision that Columbia's participation rights do not run through the District of Columbia because the U.S. Constitution says they must run through its State.  A State is a sovereign jurisdiction controlled by its people, not by Congress.  For the purpose of Art I representation in Congress, neither the District of Columbia nor Congress can claim State jurisdiction because such representation is reserved only to states.

21. To any argument that Columbia is not a State, it's inhabitants have never yielded their reserved rights which are guaranteed by the U.S. Constitution.  The U.S. Constitution doesn't provide for part of a state of the Union to be involuntarily made "not part of a state" or "not a state".  Nowhere does the U.S. Constitution say the seat of U.S. Government shall not be located in a state.

22. Readmission to the Union cannot be a requirement; Columbia has never left the Union[8] and Congress approved its State Constitution in the *1801 Organic Act* of cession.  These facts make Columbia different from the creation of any other state by partition – in all other cases the

---

[7] Texas v. White, 74 U.S. 700 (1868) "4. But the perpetuity and indissolubility of the Union by no means implies the loss of distinct and individual existence, or of the right of self-government by the States. On the contrary, it may be not unreasonably said that the preservation of the States and the maintenance of their governments are as much within the design and care of the Constitution as the preservation of the Union and the maintenance of the National government. The Constitution, in all its provisions, looks to an indestructible Union composed of indestructible States."

[8] *O'Donoghue v. United States, 289 U.S. 516 (1933)* "It is important to bear in mind that the District was made up of portions of two of the original states, and was not taken out of the Union by the cession."

partition was voluntary with the partition becoming a territory which applied for readmission as a new state in the same breath.

23. The *1801 Organic Act* at section 1 agrees with Maryland's 1791 Act[4] that Columbia retains state law which included *Maryland's Bill of Rights and Constitution* as it was then[9] therefore the cession complied with all Art IV § 1 cl. 3 admission consent requirements.

24. The forfeit of Columbia's non-reserved rights to Congress' jurisdiction under District Clause is not in dispute.  This action does no harm to Congress' exclusive jurisdiction over all District matters whatsoever in *U.S. Const. art. I, § 8, cl. 17*.

25. Columbia's State law and Constitution (which is Maryland's Constitution at cession), remains in effect where not superseded by Federal or District of Columbia law.  It was fully consented to by the United States Government in 1801[9].  It is not superseded with regards to Art I rights of representation through a State and in that context the following provisions are in full force:

    a.  The people of Columbia may elect a State Legislature pursuant to section 1:

    > "THAT the Legislature consist of two distinct branches, a Senate and House of Delegates, which shall be styled, The General Assembly"

    b.  The people of Columbia may elect a congressional representatives per section 27:

    > "XXVII. That the Delegates to Congress, from this State, shall be chosen annually, or superseded in the mean time by the joint ballot of both Houses of Assembly;…".

26. Both Defendants are aware that, subject to apportionment triggered by population thresholds, States of the Union are afforded at least minimal representation of one voting U.S. House Delegate and two voting U.S. Senators.  This is what happened to Wyoming whose

---

[9] *An Act Concerning the District of Columbia, 2 Stat. 103 (1801)* (the "1801 Organic Act") at section 1: "..the laws of the state of Maryland, as they now exist, shall be and continue in force in that part of the said district, which was ceded by that state to the United States, and by them accepted as aforesaid."

representation was seated even before a census was carried out. Columbia's population reached the threshold for state representation under the 1860 census. Defendants know the populations of the District and State are identical and they already measure the population of the District in the decennial census.

27. This complaint is not a political question but one of the Defendants failing in their simple administrative duties as to the *U.S. CONST. Art I, §2* census returns thereby depriving Plaintiff of Art I representation.

28. Under *Minor v. Happersett*[10], Defendants must adhere to Columbia State law to the extent it is not modified or superseded under Federal Law.

29. The claims made in this action do not contradict *Adams v. Clinton* which only rejected two theories i) District as State and ii) Maryland as DC's State[11]; *Adams* made no examination of Columbia's inhabitants' unforfeited rights of Art I representation through a State jurisdiction. The *Adams* opinion makes no mention of or reference to Columbia's State law so the wording of the *Adams* opinion should be understood in the context of the legal theories it is responding to. Prime examples are:

   a. "*District residents did not lose state citizenship until December, 1800*". Here the opinion is talking about losing Maryland and Virginia state citizenships but incorrectly implies all state citizenship. A re-wording to include consideration of Columbia's state jurisdiction would perhaps be "*Columbia residents did not lose*

---

[10] In Minor v. Happersett, 88 U.S. (21 Wall.) 162 (1875) the Supreme Court decided that, absent a Federal law to the contrary, State law must be applied.

[11] *Adams v. Clinton, 90 F. Supp. 2d 35 (D.D.C. 2000)* "Instead, they [Plaintiffs] contend that District residents can fairly be characterized as citizens of a "state," as the term was intended in Article I, under either of two theories. First, they argue that the District of Columbia itself may be treated as a state through which its citizens may vote. Second, they contend that District citizens may vote in congressional elections through the State of Maryland, based on their "residual" citizenship in that state"

*citizenship of the states that ceded the land comprising the District until December, 1800"*

**b.** "*Rather, exclusion was the consequence of the completion of the cession transaction which transformed the territory from being part of a state, whose residents were entitled to vote under Article I, to being part of the seat of government, whose residents were not.*" The word "exclusion" here specifically means exclusion of inhabitants as residents of the District of Columbia jurisdiction. When additionally considering Columbia's state law the expanded meaning is more like *"..whose residents were not entitled to participation in the Congressional franchise through the Clause 17 District."*

**c.** *"..it is the Constitution itself that is the source of plaintiffs' voting disability.."* Clearly, had the *Adams* court expanded its consideration to include reserved State law and that Congress has no enumerated power to strip Art 1 representation rights from any part of the Union; the *Adams* opinion would have found in favor of the theory presented here. Simply adding *"through the District"* constrains the *Adams* opinion's context to the theory it was examining i.e. District as State.

In sum, in *Adams v. Clinton* the court did not opine on non-District (non-clause 17) state law jurisdiction in Columbia and nowhere did the Adams court consider Columbia's extant rights to elect a state legislature and representatives to Congress. In view of the foregoing, it cannot be said that the Plaintiff's claims presented here are rebutted by any part of the *Adams* opinion.

30. Plaintiff is familiar with the belief that that Congress repealed all old Maryland laws. This may be true in the District of Columbia but is not true under the State of Columbia jurisdiction

in which the state bill of rights and constitution (per its section 49) may only be changed upon the agreement of two successive State Legislatures.  This has not happened.

31.  In 1901 Congress, using its District Clause powers, passed an Act creating a new municipal code for the District of Columbia.  By Congress' own words[12], that Act, excluded repeal of the ex-Maryland 1776 State Bill of Rights or Constitution because they are sovereign law decided by a state constitutional convention and <u>not</u> acts of a "*general assembly*".  In addition, Congress has and had no jurisdiction to annul or amend Columbia state constitutional law in order or to annul rights reserved only to Columbia's State Legislature.

32.  **Narrative.**  This action would not be complete without some consideration of how the current state of affairs evolved since 1801.  First, it seems perfectly feasible that a pragmatic decision was made by the U.S. government not to directly mention State representation rights in the written legislation because it seemed nonsensical for 11,000 people to have two U.S. Senators and the District Clause wording was so strong.  To be consistent with this approach, Columbia was shown on the census returns only as the District of Columbia.  While there was significant unhappiness expressed, many people of influence who qualified as Columbia voters in 1801 (which at that time was property-owning men) could claim residence in other states - so were unaffected.  Over time orthodoxy was developed which gradually shut down arguments against what is a violation of the Constitution, mostly by pointing to the District Clause giving Congress absolute power; we now know through subsequent litigation that is not true; Congress has no power to annul the right to participation in the Congress.  An unconstitutional myth has been created out of the confusion over the limits of Congress' jurisdiction.  Over a

---

[12] An Act to establish a code of law for the District of Columbia, 1901, Sec. 1636:
   "All acts and parts of acts of the general assembly of the State of Maryland… are hereby repealed

period of time multiple cases, such as those cited here, have brought greater clarity around civil rights in a federal enclave.

33. The *Evans v. Cornman* case showed that inhabitants of a clause 17 territory in the Union could vote through the state in which it was located.   However, the *Adams v. Clinton* suit sought recognition of the District of Columbia as a state but failed and the decision was affirmed on petition to the Supreme Court.  In all of these cases the courts recognized harm and injustice but no remedy was found to the inherent contradiction of a constitutionally guaranteed right of representation in government, which was the main motivation for fighting the war of independence and ratifying the constitution, being denied performance because of tricky wording elsewhere in the constitution that does not even declare that the seat of U.S. government may not be located in a State.  It is well known that signatories to the constitution did not want the U.S. government to be influenced by or its security threatened by a surrounding state but this is no objection to the case presented here: **Defendants' compliance with their administrative duties would result ONLY in enabling the State of Columbia's Art I representation in Congress but all remaining State rights in Columbia would continue unchanged i.e. delegated to Congress's jurisdiction under the "all Cases whatsoever" language of the  District Clause**.

34. The biggest puzzle to the Plaintiff was none of the individual acts of cession were themselves unconstitutional and, of course, the U.S. Constitution itself cannot be unconstitutional.  It is clear the founder's intent was to ensure the Federal government's independence from surrounding state governments following the Philadelphia Mutiny of 1783 and this surely influenced the later refrain that the capital of the U.S. is not in a state, even though the District Clause says no such thing.   There was immediate opposition to disenfranchisement by Columbia's inhabitants at cession yet Columbia's population was small, only 11,000 at cession

even with the initial Virginia portion and case law was not well developed; every single case cited in this complaint is from after the 1801 cession and its immediate controversy.

35.  The Federalist gives important insight into the founders pragmatic reasoning and shows:

   a.   they assumed that the cession would be conducted with the consent of Columbia's inhabitants[13] (which was never obtained) and

   b.   they contemplated that a municipal legislature would be put in place to provide for voting in political elections[14] (which was not done).

   There is ample evidence, then, that the Founders envisioned the same end result that this "Columbia as State" action provides – a subjugation of the normal constitutional order with Congress directly controlling its surroundings but a Legislature to provide the inhabitants' constitutionally guaranteed voice in government.

36.  Plaintiff's extensive research into the partitioning of other states yielded an important difference.  All other partitioning of an admitted state that has resulted in a new state involved the putative state voluntarily leaving the Union (albeit remaining a subject U.S. territory) and seeking readmission with its own government and own state constitution.  Multiple court cases confirmed that Columbia, as the sole exception to this pattern, never left the Union when partitioned from Maryland and its constitution remained unchanged.  Scrutiny of the *1791 Act of Maryland* ceding Columbia (para. 13 above) shows that a) Columbia was not ceded to Congress without limitation and b) the act specifically required the continuation of Maryland state law i.e. no loss of jurisdiction. If the act of cession had not had that final stipulation

_____

[13] Federalist No. 43: "And as it is to be appropriated to this use with the consent of the State ceding it; as the State will no doubt provide in the compact for the rights and the consent of the citizens inhabiting it;"
[14] Federalist No. 43 "as a municipal legislature for local purposes, derived from their own suffrages, will of course be allowed them;"

Plaintiff would be here arguing the cession was invalid under *Amendment X* (which was passed prior to the *1791 Act of Maryland*).  This understanding resolves the apparent constitutional contradiction; Columbia had not been stripped of its reserved state rights yet its inhabitants are denied representation in Congress.

The only remaining issue is why the Defendants have not calculated the State of Columbia's apportioned representation in any decennial census return which Defendants know is used by Congress to admit states' delegates.  Hence this complaint.

37. The Theory of Maryland as Columbia's State for the purposes of Art I representation

Plaintiff has revisited the theory that residents of Columbia are entitled to representation through Maryland.  If *Amendment X* prevents delegation to Congress of State Legislature jurisdictions, were prior rulings on the cession incomplete? i.e. if the *1791 Maryland Act* only ceded to Congress the rights defined by the District Clause then did Maryland remain Columbia's state for the purposes of Art I representation in Congress?  Such a determination would overturn the affirmed opinion in *Adams v. Clinton* regarding the 'residual state rights through Maryland' theory which opinion in turn relies on *Albaugh v. Tawes,* 379 U.S. 27, 85 S. Ct. 194, 13 L. Ed. 2d 173 (1964) (per curiam) where (quoting *Adams*) "a three-judge district court considered a suit seeking a declaratory judgment "that the District of Columbia is a part of the State of Maryland for purposes of United States Senator elections.""

Plaintiff does not subscribe to the Maryland as Columbia's state theory because the *1801 Organic Act* perpetuated Maryland laws "as they now exist" and Maryland consented to that Act.  This fact shows the intent was complete jurisdictional separation of Columbia from Maryland at the point of cession and all their laws would diverge.  If, however, it is decided that *Adams* and *Albaugh* should be overturned in this regard the Defendants' decennial returns are still incorrect because the Maryland population count and apportionment will be higher.

38. **Summary** of main points in Plaintiff's "Columbia as State" argument:

a. The 1801 cession yielded to Congress *U.S. CONST. art. I, § 8, cl. 17* jurisdiction in Columbia. The cession explicitly constrains the ceded powers to only clause 17[4].

b. Congress' clause 17 powers do not include being Columbia's State Legislature for the purposes of Art I representation in Congress; *Adams* determined that would be impossible (para. 12 above). Representation under Art 1, therefore, remained within the jurisdiction of a State Legislature as originally written in the U.S. constitution, per *Adams*, see para. 12 above.

c. Nowhere does the Constitution require the Federal District to not be located in a State.

d. It is a violation of the U.S. Constitution to prevent inhabitants of a clause 17 enclave from voting on representation in Congress through their State, see *Evans* para. 11 above.

e. The Constitution prohibits Congress from depriving inhabitants of the Union of their reserved right to State representation in Congress either directly or indirectly[5]. This is also consistent with the Adams opinion[2].

f. The Constitution nowhere provides that part of a state can be made not a state (or not part of a state) within the Union. Such an action would be unconstitutional therefore Columbia is a state jurisdiction with respect to Art I representation in Congress.

g. Congress consented to state law in Columbia as it was at cession. That consent requires recognition of Columbia as a State under *Art IV*. If not so recognized, the cession becomes an unconstitutional preclusion of voting rights in contradiction of the *Adams* finding at footnote 1. Columbia's State law explicitly provides for a State Legislature and delegates to Congress, see para. 25 above.

## V. HARM

39. Plaintiff is injured by Columbia's lack of apportioned representation under *U.S. CONST. art. I, § 2 and § 3. (as amended)*.  Plaintiff's claim to "injury in fact" has the same basis as was found to exist in *Adams v. Clinton, 90 F. Supp. 2d 35 (D.D.C. 2000)* which can be concluded by substituting "residents of Columbia" for "residents of the District" in the *Adams v. Clinton* opinion below:

> "Hence, if the residents of the District are entitled to such a voice, which we must presume for purposes of standing analysis, its denial plainly constitutes an "injury in fact." *See Department of Commerce v. United States House of Representatives,* 525 U.S. 316, 119 S. Ct. 765, 774, 142 L. Ed. 2d 797 (1999) (holding that resident's "expected loss of a Representative to the United States Congress" through reapportionment "undoubtedly satisfies the injury-in-fact requirement of Article III standing"); *Michel v. Anderson,* 14 F.3d 623, 626 (D.C.Cir.1994) (noting that "[i]t is obvious that Georgia voters would have suffered an injury" if "the House were to prevent all congressmen from the State of Georgia from voting in the House")."

## VI. CAUSES OF ACTION

### C.   COUNTS I – IV.  Violations of Columbia Law, Art I, 10th & 14th Amendments

40. Defendant A asserted to State law rights in Columbia that explicitly provide for a State Legislature and delegates to Congress and has failed to honor those rights not forfeit under the District Clause.  Both Defendants have violated the *U.S. CONST. art. I, § 2 and § 3* guarantees of participation in the Congressional franchise as a fundamental right reserved to all States, subject to apportionment and the Equal Protection clause of Amendment XIV, shielded from federal interference by the *U.S. CONST. Amendment* X.  As a result of Defendants' failure to follow these laws, Plaintiff is harmed by not being counted in the decennial census as a resident of the State of Columbia and consequentially has no apportioned voting representation in Congress.

### D.   COUNT V - Equal Footing Violations

41.  Defendant A assented to Columbia State law and knows that all States within the Union must be treated equally[15].  Defendant B knows Defendant A assented to Columbia State law.  By omitting the "State of Columbia" from the census returns Defendants denied its people, including Plaintiff, the benefits of the equal footing doctrine.  While Congress has exclusive legislative control of the District of Columbia through the enumerated delegation of power in the District Clause, Defendants have at all times known the District of Columbia is not a State for the purposes of *U.S. CONST. art. I, § 2 and § 3* representation.

42.  The Defendants know, per this court and the Supreme Court's affirmation of *Adams v. Clinton*, the powers delegated to Congress do **not** include the choosing of representatives to Congress[2] thus they remain undelegated powers of the State of Columbia.  Defendants unlawfully chose to treat Columbia only as a Federal enclave and not as an equal state despite it being a founding member of the Union when it ratified the U.S. Constitution in 1788.  As a result of Defendants' failure to follow the Equal Footing doctrine, Plaintiff is not counted as the resident of a State and consequentially has no *U.S. CONST. art. I, § 2 and § 3* voting representative in Congress.

---

[15] Pollard's Lessee v. Hagan, 44 U.S. 3 How. 212 212 (1845): "The shores of navigable waters, and the soils under them, were not granted by the Constitution to the United States, but were reserved to the States respectively, and the new States have the same rights, sovereignty, and jurisdiction over this subject as the original States."

### VII.          PRAYER FOR RELIEF

43. Plaintiff seeks a declaratory order that makes clear:

   a. Columbia remains a part of the Union and has not forfeit rights to representation reserved only to States as originally written in *U.S. CONST. art. I, § 2 and § 3* of the U.S. Constitution. These reserved rights are not subject to Congress' jurisdiction under *U.S. CONST. art. I, § 8, cl. 17*.

   b. It is unconstitutional for Defendants to block Plaintiff's Art I rights of representation through the State of Columbia by failing to inform Congress of the outcome of apportionment as required by 13 U.S.C. *§*141(b) and 2 U.S.C. *§*2a in compliance with the Equal Footing doctrine.

Possible wording of such a declaratory judgment order is:

"All inhabitants of *U.S. CONST. art. I, § 8, cl. 17* Federal Enclaves in the Union are entitled to representation in Congress through their State under *U.S. CONST. art. I, § 2 and § 3*. That Columbia was created from the cession of a partition of Maryland does not change this constitutional entitlement. In that cession, Maryland's General Assembly, U.S. Congress and Defendant A consented to the continuation of Columbia's State law, as it was in 1801. That law survives and sets forth the rights to elect a State Legislature and members of Congress which rights are reserved and protected under Amendment X. Defendants are required by the U.S. Constitution, 2 U.S.C. *§*2a, and 13 U.S.C. *§*141(b) to include the State of Columbia in their decennial census returns to Congress on an equal footing with other states of the Union and provide prompt corrections where not currently in compliance."

18

## VIII.    NO JURY DEMAND

44. Plaintiff does not demand a jury trial.

May 20, 2022

Respectfully submitted,


John H. Page (pro se)

1077 30th Street NW, Apt 411
Washington, D.C. 20007
Telephone: 202-352 6952
*john.h.page@gmail.com*

19