**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| John H. Page ) | |
| 1077 30th Street NW ) | |
| Apt. 411 ) | |
| Washington, D.C. 20007 ) | |
| Tel: 202 352 6952 ) | |
| ) | Case No. |
| Plaintiff ) | 1:22-cv-01416 |
| ) | |
| v. ) | |
| ) | |
| Joseph R. Biden Jr., in His Official ) | |
| Capacity as President of the United ) | |
| States, Office of the President ) | |
| 1600 Pennsylvania Avenue, N.W. ) | |
| Washington, D.C. 20500 ) | |
| ) | |
| Gina M. Raimondo, Secretary ) | |
| Commerce U.S. Department ) | |
| of Commerce ) | |
| 1401 Constitution Ave NW ) | |
| Washington, DC 20230 ) | |
| ) | |
| Defendants ) | |

**Plaintiff's Opposition to Defendants' Motion to Dismiss ("MOTD")**

1. The following is structured in sections on Background, Preclusion Standards, Claims and

   Issue Preclusion in this case followed by a discussion of the Constitutionality of the 1801

   Organic Act and the Federalist quotes in this case, that Declaratory Judgement has not been

   litigated, Errors in the MOTD, The Relief Requested, Other Remedies and Conclusion.

1

# I.      Background

2.  Defendant's MOTD mis-states the outcome of the prior case 1:20-cv-00104-CRC.  The sole

grounds for dismissal of the prior case was the lack of injunctive relief against the President

for changing the decennial census returns because there is a discretionary element involved.

(Opinion, Page 5):

> "The President offers numerous arguments for dismissal. One is that the
> Court lacks jurisdiction to grant the sole remedy Page seeks - an injunction
> requiring the President to include the population of "Columbia" in the
> census figures used to reapportion Congress. Mem. In Support of Mot. to
> Dismiss 6. The Court agrees and will dismiss the case on this ground
> without reaching the President's other arguments."

The Opinion goes on to explain that compiling the census returns involves both

administrative and discretionary acts and it is solely because of the discretionary acts that

injunctive relief could not be granted.   Importantly the merits of the prior case were not

fully litigated (Opinion page 9, emphasis added):

> "The Court will not discuss the merits of Page's claim exhaustively, as it is
> **not the role of a single-judge district court to rule definitively on the
> merits** of a challenge to congressional apportionment. See 28 U.S.C. §
> 2284(a). That said, Page's likelihood of success on the merits would appear
> very low, even if the Court had jurisdiction."

3.  In addition to stating it had not ruled definitively on the merits, it is further emphasized that

the court in the prior case stated the "likelihood" standard it used in its Analysis at page 5

of the Opinion.  A "likely" view of the merits is not a final or valid decision on the merits.

# II.      Preclusion Standards

4.  Claim Preclusion has five requirements: judgments must be (1) *final*, (2) *valid*, and (3) *on

the merits*; (4) the parties must be *identical* to those in the prior action; and (5) the claim in

the second suit must involve matters properly considered included in the first action.

5.  The Tests to find claim preclusion under the federal system are:

    a.  The first case must result in a judgment that is final, valid and "on the merits"

    b.  The claims must be the same in both cases and asserted against the same defendant(s).

6.  Issue Preclusion. The four essential elements to decide if issue preclusion applies are: 1) the first judgment must be valid and final; 2) the same issue is being brought; 3) the issue is essential to the judgement; 4) the issue was actually litigated.

7.  Authorities include *Baker v. General Motors Corp.*, 522 U.S. 222, 233 n.5 (1998) and *Cromwell v. County of Sac*, 94 U.S. (4 Otto) 351, 352 - 53 (1876).

### III.    Claims and Issue Preclusion in this case

8.  The claims are different in this case and the prior case and, in any event, none of the "issues essential to the judgment" in the prior case are merits issues. The issue in the prior case complaint was. "Does Defendant have any grounds for omitting Columbia, a State of the Union, from the census for the purposes of apportioning participation in the Congressional franchise?".  The threshold issue in the instant Complaint is whether Defendants can prove Plaintiff is not entitled to representation in Congress through a State - for which the authority is *Adams v. Clinton, 90 F. Supp. 2d 35 (D.D.C. 2000)*.

9.  Furthermore, the jurisdiction issues in the instant Complaint are different than used by the prior court and the assertion of State Law and not Federal Law in the instant case results in a state law claim (see Complaint paras 10 through 14 starting page 6) whereas in the prior

case the opinion evaluated the issues and claims under Federal law over which Congress has exclusive jurisdiction in the District Columbia[1].

10. Furthermore, the instant case at footnote 4 claims the *1791 Act of Maryland* drives the outcome, not Congress' *1801 Organic Act*. This is a new issue. The *1801 Organic Act* does not claim Congress became Columbia's State Legislature and only talks about Congress' powers in the District. It is silent, and properly so, about any powers outside the District jurisdiction. The interpretation of the *1791 Act of Maryland* is a new, unlitigated, issue and the prior case Opinion on the *1801 Organic Act* was a) not a full litigation on the merits and b) was only used to establish a likelihood that Plaintiff would not succeed on the merits if D.C. law was applied.

11. The instant Complaint, on Plaintiff's right to representation, quotes *Adams v. Clinton, 90 F. Supp. 2d 35 (D.D.C. 2000) affirmed* at footnote 1:

> "Under established constitutional principles, neither the then-People of the District nor their Posterity forfeited that constitutional right when the District became the Seat of Government"

and so Columbia never surrendered to Congress its State rights to representation per the instant Complaint (para 13 page 7):

> "Congress accepted and Defendant A assented to the terms of Columbia's cession which are stipulated in the 1791 Act of Maryland"

Neither of these issues were adjudicated in the prior case, let alone on the merits.

---

[1] *1:20-cv-00104-CRC Opinion Page 10:* "But Page fails to cite any act of Congress that expresses an intent to admit Columbia into the Union as a new state. The 1801 Organic Act does not fit the bill. While the Act did specify that then-existing Maryland law would "continue in force" in D.C., 2 Stat. at 104-05, that language merely indicates that Congress decided, as a matter of policy, to adopt Maryland law as a starting point for the new body of law governing D.C."
Note: The instant complaint makes no claim as to Maryland law in D.C., which is not a state for the purposes of representation in Congress per *Adams v. Clinton.*

12. In the instant complaint para 30, under Columbia State Law (ex-Maryland) state bill of rights and constitution (per its section 49) may only be changed upon the agreement of two successive State Legislatures. This has not happened hence the law in Columbia on matters not in the jurisdiction of the District of Columbia is the same as it was at cession in 1801. This issue has not been litigated.

13. A threshold issue in the instant case carried over from the prior case is whether executives of the United Sates can flout their oaths of office and abrogate Constitutional guarantees affirmed by the U.S. Supreme Court per footnote 1 of the Complaint.  Unlike the prior case i) a declaratory judgment is sought and ii) the instant Complaint's suggested relief contains no order regarding how apportionment is carried out – which may be discretionary - but only to include the State of Columbia when performing it (Complaint page 18):

> "Defendants are required by the U.S. Constitution, 2 U.S.C. §2a, and 13 U.S.C. §141(b) to include the State of Columbia in their decennial census returns to Congress on an equal footing with other states of the Union and provide prompt corrections where not currently in compliance."

A declaratory, non-enforceable, order is sought thereby not forcing any discretionary elements of action unlike the injunctive relief sought in the prior case in which declaratory action – which is designed for such circumstances – was not fully litigated and therefore cannot be precluded.  The Opinion in the prior case mentions declaratory action sua sponte for the first time in all of the case filings, including those by both parties and a right to reply was denied.  It cannot therefore be said that declaratory orders against the President, let alone the new Defendants in combination, have been litigated let alone fully litigated on the merits.

14. The only preclusion from the prior case is that injunctive relief cannot not be provided against the President where the relief requested requires some discretionary action.  Opinion at page 6:

> "That is so because Page is asking the Court to order the President to perform more than a mere ministerial duty.  The President's role in congressional apportionment has both discretionary and ministerial aspects."

15. The instant case seeks declaratory, not injunctive, relief against two defendants on the basis of the binding opinion re representation in Congress in *Adams v Clinton* (Complaint para 1 footnote 1) and the *1791 Act of Maryland* that ceded Columbia (Complaint para 2).  Neither of these issues was brought in the prior complaint and neither was litigated and cannot, therefore, be precluded.

## IV.   Constitutionality of 1801 Organic Act & Federalist

16. The *1801 Organic Act* is about the creation of the Federal District, not state's rights.  There should be no surprise that it does not mention *Art IV*; the *1801 Organic Act* contains no language that disenfranchises the inhabitants of Columbia of the right to representation through a state (per finding in *Adams*).   In the prior case the *Art IV* issue was not fully litigated: the Defendant never raised it; it first appears sua sponte in the Opinion and the court used its discretionary power to deny a reconsideration of that issue.  The *Art IV* issue has not, therefore, been litigated on the merits and not litigated at all in the State jurisdiction claimed in the instant Complaint.  Plaintiff is and was entitled to due process which in litigation means the opportunity to rebut.

17. If this court finds in the instant case that any Federal law, including the *1801 Organic Act*, prevents the inhabitants of Columbia from exercising their constitutional right to representation in Congress then that Federal law is deficient and unconstitutional either by

a) denying relief against the Defendants for a harm against state law rights or by b) requiring readmission of a state that has never left the Union despite the fact that Columbia's inhabitants never agreed to that.  Again, this issue has not been fully litigated and is not precluded.

18. The court's attention is brought to the passages in the Fedseralist that show the founders intent that Columbia's inhabitants would be allowed their constitutional right to representation (Complaint para 35).  This issue was not litigated at all in the prior case.

## V.    Declaratory Judgment not litigated

19. The instant case is for declaratory judgment which requires no enforcement, is in a different jurisdiction (paras 10 through 14) regarding state claims and has different claims against different defendants.  While the Opinion in the prior case indicates that a declaratory judgment may not be issued against the President if it encompasses a discretionary Presidential activity: a) such declaratory judgement was not sought or litigated in the prior case, b) no such relief is sought in the instant case and c) is a different issue in this case because declaratory relief is requested against one or both defendants and is therefore not precluded.

## VI.    MOTD Errors

20. Jurisdiction.  The MOTD at page 8 states "Plaintiff's Claims Fail on the Merits Because the District of Columbia is Not a State for Apportionment Purposes." but this not relevant to Plaintiff's argument which is that Columbia has State rights of representation that are not within Congress' jurisdiction in the District.  See Complaint paras 10 through 14 starting page 6.

21. Equivocation of Columbia.  The MOTD follows on page 8 by equivocating "District of Columbia" with just "Columbia".  The term Columbia includes the "District of" and "State of".  Again see Complaint paras 10 through 14 starting page 6.  This distinction was not litigated in the prior case.

22. Moreover, Defendants' MOTD page 8 argument as to the merits fails.  First, the prior case did not find that Columbia is not a state of the union.  Second, Defendant does not explain why Amendment X does not operate in protecting Columbia's state rights of representation in Congress at cession.  Third, Defendant's assertion is contrary to the binding decision in *Adams* which is stated in footnote 1 in the instant Complaint and here above that the inhabitants of Columbia have not forfeit their rights to representation in Congress through a state.  Fourth, neither the prior case nor the MOTD cite any authority for the need to obtain *Art IV* admission for Columbia which has never left the Union.  As stated before, in accepting the terms of Maryland's cession of Columbia the *1801 Organic Act* Congress accepted that Columbia had the right to Art I representation in Congress on an equal footing (to Maryland and hence to all other states).  Finally, the prior case Opinion was only discussing a **likelihood** on the merits, not a final judgement.

23. Defendants' MOTD points the finger at the *1801 Organic Act* as the reason Plaintiff does not have his constitutionally guaranteed representation in Congress.  Defendants are de facto arguing that the *1801 Organic Act* is unconstitutional, firstly because their interpretation violates the protection of rights reserved to States by Amendment X and, as stated clearly in the Complaint (para 21, page 9) and unanswered in the MOTD.

24. The U.S. Constitution doesn't provide for part of a state of the Union to be involuntarily made "not part of a state" or "not a state".  Nowhere does the U.S. Constitution say the seat

of U.S. Government shall not be located in a state.  The prior case opinion does not comment on this issue and it is not precluded.

25. Furthermore, Congress's Acts creating Federal enclaves under the same clause of the Constitution as applies to the District did not exclude their inhabitants from representation through their states.  See Complaint *Evans v. Cornman* para 33 page 15.  This being the case, there is no reason for Defendants to withhold apportionment.  This issue has not been litigated.

26. **Conclusion**: The above demonstrates there are multiple undecided disputes as to the facts and the law in this case which this court must construe in favor of the Plaintiff in considering the MOTD.  These are not trivial and involve, as but one example, whether Congress has the power to disenfranchise any State of its representation rights.  In both *Adams* and in *Evans v. Cornman*, the U.S. Supreme Court affirmed the answer is "no".

## VII.    Relief against Defendants

27. The MOTD at page 2 claims:

> "The Court also cannot afford redressable relief against the Secretary of Commerce because she is not responsible for informing Congress of apportionment."

28. Plaintiff agrees that the Secretary of Commerce does not directly submit decennial census returns to Congress.  The claims against the Secretary are clearly spelt out in the instant Complaint at para 18, para 26, and the causes of action provided at paras 40 to 42.  Key here is the knowledge of the Secretary of Commerce that the returns she provides to the President are deficient in omitting Columbia and she knows the apportionment she calculates is used to determine representation in Congress.  Furthermore, consider the case where the Secretary of Commerce has made an error in the apportionment calculations for

a State, she could be ordered to provide a corrected document for submission to Congress by the President.  Plaintiff avers the second Defendant has made an error in performance of her duties under the law and she has no discretion over whether to correct, only in the manner of the correction.  The relief requested in this case does not seek to control her discretionary acts.

29. The wording in para 43 of the Complaint that the Secretary of Commerce complains about is intended to apply jointly and severally to the Defendants regarding their combined responsibilities.  Clearly this court can adjust the wording of the requested relief as it deems appropriate.  The Secretary of Commerce is definitely responsible for determining the "outcome of apportionment" for delivery by the President as asserted in para 43.

## VIII.   Other Remedies

30. The inhabitants of Columbia are entitled to representation through their State as a Constitutional right that has not been forfeit[2].  Defendant's MOTD provides no reason why they may obstruct it.  The inhabitants of Columbia have been excluded from the law-making process since 1801 and are not obliged to obey laws made without input from their apportioned representation, (including those laws that govern preclusion); the obstruction of those fundamental rights is unconstitutional and the burden of finding a remedy rests with the Defendants because they are the obstructors and are charged with knowledge of

---

[2] *Adams v. Clinton, 90 F. Supp. 2d 35 (D.D.C. 2000) affirmed*, section B: "Nor could the cession preclude voting representation of the "persons to be" in the ceded area." "Under established constitutional principles, neither the then-People of the District nor their Posterity forfeited that constitutional right when the District became the Seat of Government, and neither Maryland, nor the United States or its officers, had the constitutional authority to forfeit that right for them."
N.B. in the above, "the District" necessarily means "Columbia" since the Federal District did not exist before cession; only Congress had the power to create it.

the law.  Columbia's inhabitants have never agreed not to be able to obtain relief from Federal government for a Constitutional harm and are not bound by any Federal decision that obstructs their rights.

31. If this court grants the President discretion to inflict harm by ignoring state rights guaranteed by the Constitution under federal rules precluding Columbia's inhabitants from seeking those rights, this creates a constitutional crisis.  This issue has not been litigated.

### IX.     Conclusion - The Court's Authority

32. The MOTD challenges whether this court can issue relief against the Defendants.  First, the instant Complaint has been constructed to avoid the question of ordering either Defendant to carry out anything other than a ministerial duty (unlike the Opinion in the prior case). Relief is not sought to control exactly how the apportionment calculations are run or the discretionary acts in management of said calculations.  If Plaintiff is unhappy with the discretion applied that would be the subject of a different complaint, it is outside the scope of this one.

33. An injunction issued against the president on constitutional grounds is extraordinary, usually because there is almost always a lower-level official that the Court can enjoin instead. For example, in *Youngstown Sheet & Tube Co. v. Sawyer*, the Supreme Court invalidated President Truman's wartime executive order to seize American steel mills and enjoined his Secretary of Commerce from carrying it out. That is the approach here.

34. In recent decisions considering the various iterations of President Trump's travel ban, courts have followed the same tack — declining to issue an injunction or a declaration against the president directly, but enjoining his subordinates from carrying out his orders. This approach is available here for the court to ensure fundamental Constitutional rights are

observed.  In cases in which the court sees the President is the only person who can halt the illegal action, such as *Clinton* and the 1970s D.C. Circuit case *NTEU v. Nixon*, courts have not hesitated to issue relief against the President himself.

35. Rule by a lawless executive, unconstrained by higher authority, amounts to tyranny. The founders' fear of backsliding into such a system of unconstrained, centralized governmental power drove them to adopt a Bill of Rights in the first place and this view is supported by the Federalist papers cited herein.  The supreme law must be enforceable by one branch against another else it becomes merely an optional guideline.

36. Recently, the federal judge overseeing the *District of Columbia v. Trump emoluments* case rejected the argument outright, stating that it saw "no barrier to its authority to grant either injunctive or declaratory relief" against a president who violates the law.

37. With the declaratory relief requested, combined with exclusion from the order of any discretionary activities within apportionment, relief is limited to only ministerial actions and:

- the MOTD Argument A on Preclusion is incorrect see section I through III above and throughout.

- MOTD Argument B (Secretary of Commerce does not directly submit the census to Congress) is addressed above  in section VII Relief Against Defendants

- MOTD Argument II (The District of Columbia is Not a State for Apportionment Purposes) is also disposed of above because a) the court in the prior case specifically said its opinion on the merits was not determinative (i.e. not final) and b) because Defendants state Plaintiff's position (in either case) incorrectly. See VII MOTD Errors.

38. The court is required at this stage to accept Plaintiff's assertions as true and should proceed to deny all the MOTD's assertions. Thus, the court is entreated to deny the MOTD.

39. Plaintiff would be delighted to attend a hearing to answer the court's questions directly and was denied same in the prior case.

August 21, 2022

Respectfully submitted,

/John H. Page/
John H. Page (pro se)
1077 30th Street NW, Apt 411
Washington, D.C. 20007
Telephone: 202-352 6952
john.h.page@gmail.com